IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JUDITH ANN FRANCO,** | CV 03-1688-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **SITEL CORPORATION,** | |
| Defendant. | |

**JUDITH ANN FRANCO**
18150 S.W. Rosa Road
#103
Aloha, OR  97007
(503) 649-2542

	Plaintiff, *Pro Se*

**CHRISTOPHER E. HOYME**
**RACHEL K. ALEXANDER**
Berens & Tate, P.C.
10050 Regency Circle
Suite 400
Omaha, NE  68114
(402) 391-7363

1 - OPINION AND ORDER

**PATTY T. RISSBERGER**
Crispin & Associates
9600 S.W. Oak Street
Suite 500
Portland, OR  97223
(503) 293-5769

    Attorneys for Defendant

**BROWN, Judge.**

    This matter comes before the Court on Defendant's Motion for Summary Judgment (#46).  For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## BACKGROUND

    The following facts are undisputed unless otherwise noted:

    Defendant hired Plaintiff as a "customer relationship manager" on May 1, 2000.  As a customer relationship manager, Plaintiff answered customers' questions about warranty coverage and other issues.  Defendant monitored its employees and kept records of the time employees spent on each customer's call, the time the employees took to resolve each question, and the number of unresolved questions.

    On August 15, 2001, Plaintiff requested intermittent leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2612(a)(1)(D), on the ground that Plaintiff suffered from osteoarthritis in her knees, neck, and back; experienced "episodic . . . period[s] of incapacity"; and required periodic

visits to the doctor. Defendant granted Plaintiff's leave request.

In June and October 2001, Defendant gave Plaintiff written warnings because Plaintiff was, among other things, behind in her work, failed to call back customers, and had too many open files. On November 2, 2001, Defendant gave Plaintiff a "phase-2" written warning because Plaintiff had not improved her work as required by Defendant.

At some point, Plaintiff experienced problems with her rotator cuff. On November 9, 2001, Plaintiff's doctor provided a note to Defendant in which the doctor stated Plaintiff should not work for one week and should do only light work that did not involve lifting her arms above shoulder level after November 19, 2001. Plaintiff did not request FMLA leave for her shoulder problems, and she knew Defendant would not consider her leave for shoulder problems as being covered under the FMLA.

On November 18, 2001, Plaintiff's manager discovered Plaintiff had ten open cases, five of which had been open for more than 60 days. Defendant terminated Plaintiff's employment on November 19, 2001.

In the meantime, Plaintiff applied for Social Security on the basis of her disabilities. The Social Security Administration (SSA) found Plaintiff was disabled and eligible for benefits as of November 19, 2001. Plaintiff has not worked

since her termination by Defendant.

On December 8, 2003, Plaintiff, proceeding *pro se*, filed a Complaint against Defendant in this Court alleging discrimination under the Americans with Disabilities Act (ADA), wrongful termination, and violations of the FMLA. After the Court granted Defendant's various Motions to Dismiss and to Strike, Plaintiff proceeded on her Second Amended Complaint in which she alleges (1) Defendant did not comply with its company policies; (2) Defendant retaliated against Plaintiff in violation of the ADA; (3) Defendant did not accommodate Plaintiff in violation of the ADA; (4) Defendant violated the FMLA; (5) Defendant failed to supply Plaintiff with proper information under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161; and (6) Defendant did not pay Plaintiff for her vacation time upon termination.

On June 27, 2005, Defendant filed a Motion for Summary Judgment as to all of Plaintiff's claims. Plaintiff did not file a response to Defendant's Motion. On September 7, 2005, Magistrate Judge John Jelderks issued Findings and Recommendation in which he recommended the Court grant Defendant's Motion for Summary Judgment. On September 22, 2005, Plaintiff filed objections to the Findings and Recommendation and a Response to Defendant's Motion for Summary Judgment. On September 26, 2005, Defendant filed a Motion to Strike Plaintiff's Response to the

Motion for Summary Judgment as untimely. Magistrate Judge Jelderks referred the Findings and Recommendation and Motion to Strike to this Court on September 28, 2005.

On November 9, 2005, this Court issued an Order granting Plaintiff leave to file a late response, allowing Defendant to file a Reply, denying Defendant's Motion to Strike, and holding the Findings and Recommendation issued September 7, 2005 were moot.

**STANDARD**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a

material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I. Violations of Company Policy

In her Complaint, Plaintiff alleges as a separate claim that Defendant violated its own company policies. For example, Plaintiff alleges Defendant's employees discussed "items with Plaintiff [without] going to a privacy room," Plaintiff's manager yelled at her, and awards and letters for Plaintiff's performance were not in her file. These allegations, however, do not state a claim, and, therefore, the Court grants Defendant's Motion for Summary Judgment on this claim. Insofar as these allegations

support Plaintiff's other claims, the Court will consider them in the context of those claims.

## II. ADA Claims

Plaintiff alleges Defendant violated the ADA when it retaliated against Plaintiff and failed to accommodate her. Defendant, however, contends Plaintiff is not a qualified individual with a disability, and, therefore, she may not bring claims against Defendant under the ADA.

The ADA provides "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . ."  42 U.S.C. § 12112(a).  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability.'"  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th Cir. 2000) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999)).

In *Cleveland*, the Supreme Court addressed the issue of whether a plaintiff who represented to the SSA that she was totally disabled also could consistently claim to be a qualified individual with a disability for purposes of the ADA.  526 U.S.

7 - OPINION AND ORDER

at 797. The Court concluded the two claims "do not inherently conflict to the point where courts should apply a special negative presumption, . . . because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id*. at 802-03. The Court reasoned in some cases

> an earlier [Social Security] claim may turn out genuinely to conflict with an ADA claim. . . . An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"-that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. . . . And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case-at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the . . . SSDI total disability claim. *Rather, she must proffer a sufficient explanation.*

*Id*. at 805-06 (emphasis added).

Here Plaintiff applied for Social Security disability insurance (SSDI) on the basis that she was totally disabled and unable to do any work. The SSA agreed and found Plaintiff completely disabled and entitled to benefits as of November 19, 2001. Plaintiff's application and acceptance by the SSA appear to negate an essential element of her ADA claims. Under *Cleveland*, therefore, Plaintiff must proffer a sufficient explanation for this apparent contradiction.

In her Response to Defendant's Motion, Plaintiff contends she was not disabled completely at the time she began her

8 - OPINION AND ORDER

employment with Defendant, and she became disabled completely only later in her employment, which resulted in her total disability by the date of her termination. The Ninth Circuit, however, has held the date of the adverse employment action is the relevant date for determining whether someone is a qualified individual under the ADA. *See Weyer*, 198 F.3d at 1112 (an employee must be able to perform essential job functions at the time of termination).

Because Plaintiff was totally disabled on the date of the adverse employment action and Plaintiff has not provided a sufficient explanation for the contradiction between her SSDI representation that she was totally disabled and her ADA claims that she was a qualified individual with a disability, the Court concludes Plaintiff has not established the *prima facie* elements required for her ADA claims. The Court, therefore, grants Defendant's Motion for Summary Judgment as to Plaintiff's ADA claims.

**III. FMLA Claim**

Plaintiff contends Defendant violated the FMLA when it asked her to return to work before November 19, 2001, the date of her doctor's release. Defendant, however, contends Plaintiff was not on FMLA leave at the time Defendant terminated her position, and, therefore, Plaintiff cannot bring a claim against Defendant under the FMLA.

The FMLA allows an eligible employee to take up to 12 weeks of leave for a serious health condition that makes the employee unable to perform her job functions. 29 U.S.C. § 2612(a)(1). An employee may take FMLA leave intermittently. 29 U.S.C. § 2612(b)(1). The FMLA provides eligible employees on FMLA leave have the right to restoration of their positions or equivalent positions after such leave, but employees are not entitled to any rights, benefits, or positions of employment that the employees would not have had otherwise. 29 U.S.C. § 2614(a)(1), (a)(3)(B).

Here Plaintiff took intermittent FMLA leave for her conditions of osteoarthritis in her knees, neck, and back. Plaintiff concedes, however, that she was not on FMLA leave either at the time Defendant requested she return to work or on the date of her termination. Because Plaintiff was not on FMLA leave at either time, the Court finds she has not established a claim under the FMLA.

The Court, therefore, grants Defendant's Motion for Summary Judgment as to this claim.

**IV. COBRA Claim**

Plaintiff contends Defendant violated COBRA because (1) Defendant did not inform Plaintiff that the check she wrote for her COBRA premium had been denied for insufficient funds and (2) at some point, a COBRA employee told Plaintiff that Defendant "would not hold a position open for a length of time due to being

out on medical. . . . [Defendant] would terminate the employee rather than hold the position for a length of time."

The COBRA amendment to the Employee Retirement Income Security Act (ERISA) required Defendant to notify its plan administrator of Plaintiff's termination within 30 days. 29 U.S.C. §§ 1163(2), 1166(a)(2). In addition, the plan administrator was required to provide Plaintiff with a notice regarding continuing coverage within 14 days of receiving notice of Plaintiff's termination. *See* 29 U.S.C. § 1166(a)(4), (c). Finally, Plaintiff had 60 days from either her termination or from the administrator's notice, whichever occurred later, to elect to continue coverage. *See* 29 U.S.C. § 1165(1).

Plaintiff does not dispute she received the required notice regarding continued coverage from Defendant's plan administrator, and she signed the proper paperwork. Accordingly, the Court finds Defendant met the notice requirements of COBRA. Defendant is not its own COBRA plan administrator and, therefore, did not have any responsibility or knowledge of COBRA activities outside of its required notice to the plan administrator of Plaintiff's termination. COBRA does not require Defendant to do more.

The Court concludes, therefore, Plaintiff's allegations regarding the plan administrator's failure to tell her that her check bounced and the plan administrator's representations regarding Defendant's employment practices are not claims that

can be brought against Defendant pursuant to COBRA.  Accordingly, the Court grants Defendant's Motion for Summary Judgment on this claim.

**V.    Unpaid Vacation Time**

In her Response to Defendant's Motion for Summary Judgment, Plaintiff conceded her claim for unpaid vacation time. Accordingly, the Court concludes Defendant's Motion for Summary Judgment is moot as to this claim.

### **CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#46).

IT IS SO ORDERED.

DATED this 7th day of February, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

12 - OPINION AND ORDER